ENTERED ON DOCKET
4/7/00 PURSUANT
TO FRCP RULES 58 & 79a

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| 1 EDGAR RODRIGUEZ-OQUENDO, ELSA | |
| 2 PEREZ-ADORNO, and the marital | |
| society which they comprise, | |
| 3 | Civil No. 97-2432 (JAF) |
| 4     Plaintiffs, | |
| 5     v. | |
| 6 | |
| PEDRO A. TOLEDO-DAVILA, | |
| 7 SUPERINTENDENT OF THE PUERTO | |
| RICO POLICE DEPARTMENT, his | |
| 8 wife, and their marital | |
| society; SALVADOR PADILLA, his | |
| 9 wife, and their marital | |
| society; and JOSE GOMEZ- | |
| 10 GONZALEZ, his wife, and their | |
| marital society; JOHN DOE and | |
| 11 RICHARD ROE, | |
| 12 | |
| 13     Defendants. | |



OPINION AND ORDER

Plaintiffs, Edgar Rodríguez-Oquendo ("Rodríguez"); his wife,

Elsa Pérez-Adorno ("Pérez"); and their conjugal partnership, bring

this action pursuant to 42 U.S.C. § 1983 (1988) against Defendants

Pedro Toledo-Dávila ("Toledo"), Superintendent of the Puerto Rico

Police Department ("Police"); Salvador Padilla and José Gómez-

González ("Gómez"), Police officers; and two unknown Police officers,

all in their individual capacities.  Plaintiffs also bring claims

pursuant to Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A.

§ 5141 (1991).

Civil No. 97-2432 (JAF)                                                    -2-

Plaintiffs move to set aside our previous Opinion and Order in which we found that Defendant Toledo enjoys qualified immunity and, thus, granted his summary judgment motion.

I.

**Relevant Background**

Given that Plaintiffs' motion to set aside our summary judgment order under FED. R. CIV. P. 60 largely reiterates the factual background of our February 23, 1999 Opinion and Order, we adopt an expanded version of our previous factual summary.

Plaintiffs allege that on or about September 26, 1996, at approximately 7:30 a.m., they were en route to their jobs at the Puerto Rico Treasury Department. Rodríguez left his wife, Pérez, in a shop to buy breakfast while he parked his car in the Covadonga Parking lot located next to the Treasury Department in Old San Juan. Rodríguez states that while he was in the parking lot two men in civilian clothing, Defendants Padilla and Gómez, approached him and began to ask him questions about his car. Rodríguez states that he thought the Defendants were going to rob him and, therefore, did not respond and walked quickly towards the parking lot exit.

Plaintiff Rodríguez states that, without identifying themselves as police officers, Defendants Padilla and Gómez followed Plaintiff Rodríguez and began to curse at him. Finally, when they were on the sidewalk near the Treasury Department, Defendants Padilla and Gómez

Civil No. 97-2432 (JAF)                                                    -3-

allegedly hit Plaintiff Rodríguez in the head and started to beat him.

Pérez, Rodríguez' wife, allegedly witnessed the Defendants beating Rodríguez, and asked them to leave her husband alone. According to Plaintiffs, several employees of the Treasury Department witnessed the incident, as well as a television crew of Channel 11. A security guard from the Puerto Rico Telephone Company intervened to stop the beating.

After the beating, Defendants Padilla and Gómez identified themselves as Police officers, and arrested Rodríguez. Rodríguez states that they handcuffed him in a painful manner and took him to the 116th Precinct in Puerta de Tierra, San Juan, where he sat shackled for about one and one-half hours.

Rodríguez states that, although he was seriously injured, he did not receive medical care until a security guard from the Treasury Department demanded that the Police take Rodríguez to the hospital. Defendants Gonzalez and Gómez took Rodríguez to a medical facility. Upon Plaintiff Rodríguez' release from the medical facility, Gonzalez and Gómez charged him with disturbing the peace, resisting arrest, making threats, and aggravated assault. Plaintiff Rodríguez denied these charges, and approximately one month later, the Police dismissed all the charges.

Civil No. 97-2432 (JAF)                                                    -4-

Plaintiffs allege that as a result of Defendants' violent actions, Rodríguez suffered physical pain, and suffered, and continues to suffer, from mental anguish. Furthermore, Plaintiff Pérez began to have psychiatric problems allegedly as a result of witnessing the assault, and subsequently miscarried a seven-month pregnancy. Plaintiffs state that Defendants have deprived them of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. See U.S. CONST. amend IV, V, and XIV. Furthermore, Plaintiffs claim that Defendant Toledo, as a matter of policy and practice, and with deliberate indifference, has failed to discipline, train, or supervise adequately Police officers with respect to citizens' rights. Plaintiffs state that this failure on the part of Defendant Toledo caused the Defendant officers to engage in the alleged unlawful conduct.

On September 16, 1998, Defendants, alleging a lack of standing, moved for a partial summary judgment of Plaintiffs' federal section 1983 claim by Plaintiff Pérez and the conjugal partnership pursuant to FED. R. CIV. P. 56. See Docket Document No. 15. The next day, Defendants moved to dismiss Plaintiff Rodríguez' section 1983 claim against, among others, Defendant Toledo pursuant to FED. R. CIV. P. 12(b)(6). See Docket Document No. 16. On February 23, 1999, we dismissed the section 1983 claims by Pérez and the conjugal partnership on standing grounds. See Docket Document No. 31. We also

Civil No. 97-2432 (JAF)                                            -5-

found that Defendant Toledo enjoys qualified immunity in this
instance and, accordingly, granted summary judgment in his favor. <u>See</u>
<u>id.</u>

Plaintiffs now move for us to set aside our grant of summary
judgment. Plaintiffs contend that we mistakenly considered the issue
of qualified immunity under the summary judgment standard when
Defendants only raised it in their motion to dismiss.  They also
argue that they did not receive notice of our intention to convert
the motion to dismiss into a summary judgment motion and,
consequently, did not proffer, for our consideration, evidence
extrinsic to the pleadings.  Concomitantly, Plaintiffs maintain that
they did not have an opportunity to request an extension of time to
conclude discovery before responding to Defendants converted summary
judgment motion.   Now that discovery has almost been completed,
Plaintiffs proffer several specific instances which they believe
demonstrate that Defendant Toledo's deliberate indifference regarding
the training and supervision of Police officers under his command
affirmatively caused Plaintiffs' injuries.

These proffered instances include: (1) On April 12, 1994, a
sociologist evaluated then-Police academy admittee Padilla and
determined that he posed a moderate risk of creating employment-
related difficulties; (2) On October 16, 1995, Defendant Padilla,
while in uniform, allegedly pointed, at very close range, his

Civil No. 97-2432 (JAF)                                         -6-

revolver at the passenger of a car whose driver had honked the

vehicle's horn and requested that Padilla clear his car from the

center of a one-lane road so that she could proceed to a hospital on

an emergency; (3) In February 1996, four months after Defendant

Padilla's firearm had been confiscated, pending an investigation of

the October 16, 1995 incident, his commanding officer, Captain

Carmelo Román Quiñones ("Román") returned Padilla's firearm to him;

(4) On April 3, 1996, Dr. Guillermo Hoyos, Police Psychiatrist,

recommended that Defendant Padilla undergo a psychological evaluation

for possible anti-social behavior and latent aggressiveness; (5) On

September 17, 1996, Defendant Padilla was notified that his

employment with the Police would be terminated due to his conduct to

date; (6) On December 12, 1996, Padilla was evaluated by a

psychologist, who found no psychological abnormalities; and (7) On

January 23, 1997, Defendant Toledo notified Defendant Padilla that an

administrative board, after having held a hearing, decided to suspend

Padilla for thirty days, instead of permanently terminating his

employment. Plaintiffs further contend that Defendant Padilla was

never properly trained on how to avoid infringing upon the

constitutional rights of citizens or to refrain from using excessive

force in the completion of his duties. Finally, Plaintiffs assert

that after Defendant Padilla's firearm was returned to him, no

supervisor ever discussed with him the determinations of the

Civil No. 97-2432 (JAF)                                              -7-

disciplinary proceedings against him, nor suggested that he attend special training to modify his conduct.

Plaintiffs argue that these proffered events illustrate that Defendant Toledo or his office knew that Defendant Padilla had a history of aggression, posed a risk to the community, and needed a psychological evaluation. Nevertheless, Defendant Toledo, according to Plaintiffs, permitted Defendant Padilla to work in public as an armed Police officer. Plaintiffs conclude that, as a result, "Superintendent Toledo Dávila is liable for the foreseeable consequences of Padilla's conduct, because he acted with deliberate indifference or willful blindness." Docket Document No. 34.

Defendants Toledo and Gómez dispute Plaintiffs' legal conclusions. Defendants Toledo and Gómez assert that (1) Defendant Padilla continues to work as a Police officer because he has been found fit for duty; (2) Defendant Toledo acted with due diligence when he followed established Police procedures in disciplining Defendant; (3) Police procedures require the psychological re-evaluation of officers after they have been disarmed following a complaint against them; and (4) a Police psychologist did not find any abnormalities in Defendant Padilla's character. Consequently, Defendants Toledo and Gómez conclude that Defendant Toledo did not act with deliberate indifference, nor where his acts such that they could be characterized as supervisory encouragement, condonation,

Civil No. 97-2432 (JAF)                                              -8-

acquiescence,   or   gross   negligence   amounting   to   deliberate

indifference.

                              II.

**A.    <u>Conversion of Motion to Dismiss to Summary Judgment</u>**

     When a court considers matters outside the pleadings in deciding

a motion to dismiss pursuant to FED. R. CIV. P. 12(b), the court must

treat the motion as one for summary judgment.    <u>See</u> <u>Cooperativa de</u>

<u>Ahorro y Credito Aguada v. Kidder, Peabody & Co.</u>, 993 F.2d 269, 272

(1st Cir. 1993); <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,</u>

<u>F.S.B.</u>, 958 F.2d 15, 18 (1st Cir. 1992).    In general, when treating

a Rule 12(b) motion as a motion for summary judgment, the court must

notify all parties about the conversion, in order to give them a

reasonable opportunity to present all material pertinent to this type

of motion. <u>See</u> FED. R. CIV. P. 12(b) and (c); <u>Chaparro-Febus v.</u>

<u>International Longshoremen Ass'n, Local 1575</u>, 983 F.2d 325, 331 (1st

Cir. 1992).

     However, this court finds no need to enforce mechanically the

requirement of express notice. <u>See</u> <u>Chaparro-Febus</u>, 983 F.2d at 332.

A district court does not have to give express notice when the

opposing party has received movant's motion and materials and has had

a reasonable opportunity to respond to them. <u>See</u> <u>id.</u> (citing <u>Moody v.</u>

<u>Town of Weymouth</u>, 805 F.2d 30, 31 (1st Cir. 1986)).

Civil No. 97-2432 (JAF)                                          -9-

In the present case, both parties have provided extensive materials, including personnel records and Defendant Padilla's deposition, in addition to their arguments.  We have also already considered Defendant Toledo's alleged liability under the summary judgment standard.  Consequently, both parties have ample notice that we will re-determine Defendant Toledo's arguments under the summary judgment standard.  See Morales v. Health Plus, Inc., 954 F. Supp. 464, 466 (D.P.R. 1997).  Although we mistakenly applied the summary judgment standard with regard to Plaintiff Rodríquez's claims against Defendant Toledo in our previous Opinion and Order, we now correctly consider Plaintiff's proffered facts under this same standard.

**B.    Summary Judgment Standard**

The standard for summary judgment is straightforward and well-established.  A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Lipsett v. University of P.R., 864 F.2d 881, 894 (1st Cir. 1988).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a

Civil No. 97-2432 (JAF)                                          -10-

reasonable jury could return a verdict for the nonmoving party."

_Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. _See Celotex Corp. v. Catrett_, 477 U.S. 317, 331 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. _See id._  In other words, "[t]he party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." _Hinchey v. NYNEX Corp._, 144 F.3d 134, 140 (1st Cir. 1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." _Celotex_, 477 U.S. at 325. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." _DeNovellis v. Shalala_, 124 F.3d 298, 306 (1st Cir. 1997) (citing _Celotex_, 477 U.S. at 322-25).

Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. _Anderson_, 477 U.S. at

Civil No. 97-2432 (JAF)                                        -11-

247-48.   In addition, "factual disputes that are irrelevant or

unnecessary will not be counted." Id. at 248.   Under Rule 56(e) of

the Federal Rules of Civil Procedure, the nonmoving party "may not

rest upon the mere allegations or denials of the adverse party's

pleadings, but . . . must set forth specific facts showing that there

is a genuine issue for trial." FED. R. CIV. P. 56(e); Anderson, 477

U.S. at 256.   Summary judgment exists to "pierce the boilerplate of

the pleadings," Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794

(1st Cir. 1992), and "determine whether a trial actually is

necessary." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178

(1st Cir. 1997).

                              III.

                           **Analysis**

     Plaintiff Rodríguez maintains that Defendant Toledo, as

supervisor to, inter alia, Defendants Padilla and Gómez, is liable

for the violation of his constitutional rights.   In response,

Defendant Toledo contends that he is protected by qualified immunity

and that Plaintiff Rodríguez has failed to establish Defendant

Toledo's supervisory liability.

     Qualified immunity is an affirmative defense shielding public

officials from civil damages so long as their conduct does not

violate any clearly-established statutory or constitutional right of

which a reasonable person would be aware. See Harlow v. Fitzgerald,

Civil No. 97-2432 (JAF)                                              -12-

457 U.S. 800, 818 (1982); <u>Nereida-Gonzalez v. Tirado-Delgado</u>, 990

F.2d 701, 704 (1st Cir. 1993) (stating that the doctrine of qualified

immunity "shields government officials performing discretionary

functions from civil liability for money damages when their conduct

does not violate 'clearly established' statutory authority or

constitutional rights of which a reasonable person would have

known"). The doctrine consists of two analytical prongs. First, the

court must determine as a matter of law whether the constitutional

right in question was clearly established at the time of the alleged

violation. <u>See</u> <u>Siegert v. Gilley</u>, 500 U.S. 226 (1991);

<u>Martinez-Rodríguez v. Colon-Pizarro</u>, 54 F.3d 980, 988 (1st Cir. 1995);

<u>St. Hilaire v. Laconia</u>, 71 F.3d 20, 24 (1st Cir. 1995). In the

context of a supervisor seeking qualified immunity in a section 1983

action, the "clearly established" prong is established "when (1) the

subordinate's actions violated a clearly established constitutional

right, and (2) it was clearly established that a supervisor would be

liable for constitutional violations perpetrated by his subordinates

in that context." <u>Camilo-Robles v. Hoyos</u>, 151 F.3d 1, 6 (1st Cir. 1998

(citations omitted).

Here, we have already found that Defendants Padilla and Gómez

violated Plaintiff Rodríguez' constitutional rights. <u>See</u> <u>Docket</u>

<u>Document No. 31, p. 12</u>. Also, it is beyond peradventure that "a

deliberately indifferent police supervisor may be held liable for the

Civil No. 97-2432 (JAF)                                        -13-

constitutional violations of his subordinates." Camilo-Robles, 151

F.3d at 6.

The second prong of the qualified immunity analysis is whether

a reasonable, similarly situated official would understand that the

challenged conduct violated the established constitutional right. See

Anderson v. Creighton, 483 U.S. 635, 638-40 (1987); Frazier v.

Bailey, 957 F.2d 920, 929 (1st Cir. 1992).  This prong triggers the

doctrine of supervisory liability. See Camilo-Robles, 151 F.3d at 6-

7.  A "supervisor" for purposes of liability under section 1983 is

"defined loosely to encompass a wide range of officials who are

themselves removed from the perpetration of the rights-violating

behavior."  Camilo-Robles, 151 F.3d at 6-7 (citing City of Oklahoma

City v. Tuttle, 471 U.S. 808, 823-24 (1985)).  While supervisory

liability in § 1983 cases cannot be predicated upon a theory of

respondent superior, see Monell v. Department of Soc. Servs., 436

U.S. 658, 694 n.58 (1978), a supervisor can be found liable if he

"formulates a policy or engages in a practice that leads to a civil

rights violation committed by another." Camilo-Robles, 151 F.3d at 6-

7; see also Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997).

In other words, a state official may be held liable under section

1983 in either his official or personal capacity for the behavior of

his subordinates if: (1) the behavior of the subordinates results in

a constitutional violation; and (2) the official's action was

Civil No. 97-2432 (JAF)                                              -14-

affirmatively linked to that behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence" or "gross negligence amounting to deliberate indifference." Tuttle, 471 U.S. at 823; Lipsett, 864 F.2d at 902.

While an important factor in determining supervisory responsibility is whether the supervisor had notice of behavior that was likely to result in a violation of constitutional rights, actual knowledge of the offending behavior is not required. See Camilo-Robles, 151 F.3d at 7; Febus-Rodríguez v. Betancourt-Lebron, 14 F.3d 87, 93 (1st Cir. 1994). But see, Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992) (requiring actual knowledge or at least willful blindness). A supervisor "may be liable for the foreseeable consequences of such [offending] conduct if he would have known of it but for his deliberate indifference or willful blindness." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 582 (1st Cir. 1994) (citations omitted).

To demonstrate deliberate indifference, a plaintiff must show: (1) an unusually serious risk of harm; (2) the defendant's actual or constructive knowledge of that risk; and (3) the defendant's failure to take easily available steps to address that known, serious risk. See Manarite, 957 F.2d at 956 (citations omitted). This showing must demonstrate a supervisor's reckless or callous indifference to the rights of citizens. See Febus-Rodríguez, 14 F.3d at 92. Also, the

Civil No. 97-2432 (JAF)                                    -15-

factors reflect the plaintiff's need to connect affirmatively "the

supervisor's conduct to the subordinate's violative acts or

omissions." Maldonado-Denis, 23 F.3d at 582 (citations omitted).

Although the plaintiff can also forge a casual link by proffering a

known history of widespread abuse which should alert a supervisor to

ongoing violations, isolated instances of unconstitutional activity

ordinarily do not suffice to establish a supervisor's policy, custom,

or otherwise show deliberate indifference. See id. at 582-84

(citations omitted).

Therefore, since the constitutional rights and supervisory

liability doctrine that underlie Plaintiff Rodríguez' claim against

Defendant Toledo are clearly established, Defendant Toledo's

qualified immunity defense turns on whether he reasonably should have

understood that his conduct would have jeopardized Plaintiff's

rights. See Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir.

1999); Camilo-Robles, 151 F.3d at 7. This inquiry necessarily

involves determining whether Defendant Toledo acted with deliberate

indifference. See id. at 7-8. (collapsing the qualified immunity and

the deliberate indifference inquiries into a single analysis).

Taking, as we should, the record in the light most favorable to

Plaintiff Rodríguez, we find the record evidences the following

facts:

Civil No. 97-2432 (JAF)                                          -16-

(1) Risk of Harm.  As part of Defendant Padilla's Police academy admission, a sociologist evaluated him and determined that he posed a moderate risk of creating employment-related difficulties.  The sociologist's report does not specify anything further.  Defendant Padilla received no additional training, other than annual target practice, subsequent to graduating from the academy.  Almost a year before the incident involving Plaintiff Rodríguez, Defendant Padilla allegedly pointed his revolver, at very close range, at the head of an automobile's passenger because the passenger allegedly had sworn at him and the driver allegedly had honked the vehicle's horn.

(2) Knowledge.  Subsequent to the gun-pointing incident, the Police department investigated the matter and found that Defendant Padilla had violated two police regulations.  On April 3, 1996, approximately five months before Defendant Padilla allegedly assaulted Plaintiff Rodríguez, a police psychiatrist recommended that Defendant Padilla undergo a psychological evaluation for possible anti-social behavior and latent aggressiveness.  Lastly, on September 17, 1996, Defendant Toledo informed Defendant Padilla via a letter that he intended to terminate his employment with the police department and that Defendant Padilla had the right to request an administrative hearing on this decision, which he did.

(3) Appropriate steps.  After the Police had determined that Defendant Padilla had violated two Police regulations, Defendant

Civil No. 97-2432 (JAF)                                      -17-

Padilla's immediate supervisor confiscated his gun for four months and assigned him to clerical duties.  Between April 1996 and August 1996, the Police scheduled four appointments for Defendant Padilla to visit a psychologist.  For reasons which are not clear from the record, the doctor's appointments were never realized.

Although Defendant Toledo's failure to take greater corrective steps may have been negligent, we find that it does not constitute a reckless or callous indifference to Plaintiff Rodríguez' constitutional rights. See Febus-Rodríguez, 14 F.3d at 91 (finding that proof of mere negligence, without more, is insufficient to establish supervisory liability); Manarite, 957 F.2d at 958 (finding that police supervisor's failure to identify significantly increased risk of suicide after several attempted suicide attempts among inmates and to enforce fully suicide-prevention policies did not constitute deliberate indifference, despite loss of life resulting from his inaction); see also Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 49 (1st Cir. 1999) (finding deliberate indifference because police supervisor knew that subordinate had failed psychological component of police academy entrance exam; had been disciplined thirty times for abuse of power, unlawful use of physical force, and physical assaults; and had received six recommendations for dismissal). After the gun-pointing incident, the Police investigated it and placed Defendant Padilla on a four-month probation.  They also

Civil No. 97-2432 (JAF)                                             -18-

recommended further psychological evaluation and scheduled three

doctor's appointments.    Thus, the Police attempted to address a

potential problem in Defendant Padilla's conduct as a police officer.

Moreover, we note that when Defendant Padilla allegedly attacked

Plaintiff Rodríguez, Defendant Gómez accompanied him.    Although

Defendant Gómez allegedly also violated Plaintiff Rodríguez'

constitutional rights, the record does not indicate previous alleged

violations by him nor the Police department's knowledge of any.

Hence, Defendant Padilla's supervisors, by assigning another Police

officer to accompany him, presumably intended to constrain Defendant

Padilla's behavior and prevent future constitutional violations.    See

Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 207 n.3 (1st

Cir. 1990) (noting that "[a]n officer who is present at the scene and

who fails to take reasonable steps to protect the victim of another

officer's use of excessive force can be held liable under section

1983 for his nonfeasance."); Noel v. Town of Plymouth, Mass., 895 F.

Supp. 346, 352 (D. Mass. 1995); see also Putnam v. Gerloff, 639 F.2d

415, 423 (8th Cir. 1981) (finding that police officers have a duty to

stop other officers who summarily punish another person when they are

present or have timely knowledge of the unlawful action).

With regard to Defendant Toledo's alleged failure to train

Defendant Padilla properly, we find that Plaintiff Rodríguez has

again failed to demonstrate Defendant Toledo's deliberate

Civil No. 97-2432 (JAF)                                              -19-

indifference to the rights of citizens.  Plaintiff Rodríguez does not

proffer evidence that Defendant Toledo actually knew or should have

known that there were any problems with the Police's training

program, nor has he proffered any evidence that the training program

violated a legally mandated standard or was inferior to the

profession's standards.  See Febus-Rodríguez, 14 F.3d at 92-93.

Furthermore, we find that Plaintiff Rodríguez has not shown how a

training program which includes regular sessions on avoiding police

brutality and sensitizing police officers to the constitutional

rights of citizens would have lowered the probability that Defendant

Padilla's would commit a constitutional violation, particularly given

Defendant Padilla's alleged psychological problems.  See Hegarty, 53

F.3d at 1381.  Hence, we find that a reasonable jury could not

conclude that Defendant Toledo's implementation of the Police's

training program amounts to callous or reckless indifference to the

constitutional rights of citizens.  See id. at 93 (citations omitted).

     In sum, we find that Defendant Toledo's nonfeasance did not

constitute deliberate indifference to the constitutional violation of

Plaintiff Rodríguez' rights.  See Maldonado-Denis, 23 F.3d at 582;

Manarite, 957 F.2d at 958 ("Where one finds typical suicide

prevention policies in place, at least some officer training, and

records as empty of additional supporting detail as is this one,

courts have consistently found no 'deliberate indifference'.").

Civil No. 97-2432 (JAF)                                                    -20-

Therefore, we find that Defendant Toledo acted with objective legal reasonableness and thus is entitled to qualified immunity. <u>See</u> <u>Shabazz v. Cole</u>, 69 F. Supp.2d 177, 210 (D. Mass. 1999) (finding supervisor entitled to qualified immunity because acted with objective legal reasonableness).

## IV.

## <u>Conclusion</u>

In accordance with the foregoing, we **DENY** Plaintiff Rodríguez' motion to set aside judgment. This Opinion and Order disposes of <u>Docket Document No. 34</u>.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 31st day of March, 2000.

JOSE ANTONIO FUSTE
U. S. District Judge